IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELICIA HOLLAND,

                          Plaintiff,

            v.

CITY OF SAN FRANCISCO, et al.,

                          Defendants.

NO. C10-2603 TEH

<u>ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION TO
DISMISS</u>

This matter came before the Court on October 18, 2010, on Defendants' motion to dismiss. For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

This lawsuit arises from the May 26, 2009 arrest and search of Plaintiff Elicia R. Holland ("Holland") by employees of the City and County of San Francisco ("City").[1] Holland contends that these events violated federal and state law. At issue on this motion is whether some of Holland's claims must be dismissed because the search was lawful or because defendants are not liable for the unlawful search under federal and state immunity doctrines.

The evening of her arrest, Holland was protesting the California Supreme Court's ruling upholding Proposition 8, a same-sex marriage ballot initiative, in San Francisco, California.[2] As Holland stepped into a crosswalk to cross the street, officers of the San

---

[1] In her complaint, Holland names the City of San Francisco and County of San Francisco as separate entities. This order recognizes that they are a single entity.

[2] On a motion to dismiss, the Court must accept as true all material factual allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949-50 (2009); *Broam v. Brogan*, 320 F.3d 1023, 1028

Francisco Police Department hoisted her up and slammed her to the ground on her face, chest, and stomach. One of the officers put his knee on Holland's neck, and two sat on her back. Other officers held her feet and legs. She was kicked in the shins. She emerged bruised and battered.

The officers arrested Holland for misdemeanor battery on a police officer, Cal. Pen. Code § 243(b), refusal to comply with a lawful order, Veh. Code § 2800(a), and being a pedestrian outside of a crosswalk, Veh. Code § 21954(a). She was taken to San Francisco County Jail, where unnamed deputies strip searched her.[3] Holland cried and complained of menstrual cramps, but the deputies continued the search. After the search, Holland was put in a cell marked with a sign that read: "Inmate to be housed alone." Pl.'s Compl. At 7: 23-24. Twelve to fourteen hours after her arrest, Holland was released. She was never charged with a crime or placed in the jail's general population.

Holland filed this action on June 14, 2010, against multiple defendants involved in her arrest and search. Relevant to this motion are claims arising from the search, which allege that the City, Sheriff Hennessey, and unnamed deputies (collectively "Defendants") violated federal and state law. Holland brings federal causes of action under 42 U.S.C. section 1983 ("section 1983"), alleging unlawful search, failure to supervise the persons who conducted the unlawful search, and causation of an unlawful search by the enforcement of a blanket policy. Holland brings state causes of action under California Civil Code section 52.1, alleging interference with her exercise and enjoyment of rights, and California Penal Code section 4030(f), alleging violations of the state's strip search laws. Finally, Holland alleges that the City, Sheriff Hennessey, and unnamed deputies are liable for assault, battery, negligence, negligent infliction of emotional distress, and negligent training and supervision.

(9th Cir. 2003).

[3] Whether a search constitutes a strip search can be a legal question. *See Edgerly v. City and County of San Francisco*, 599 F.3d 946, 957-58 (9th Cir. 2010). Because Defendants do not challenge whether Holland pleaded sufficient facts relating to her search, this Court assumes that she was strip searched.

2

United States District Court
For the Northern District of California

1   Defendants filed a motion to dismiss these claims on August 26, 2010, and this motion is

2   now before the Court.

3

4   **LEGAL STANDARD**

5       Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a

6   plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a

7   motion to dismiss, the Court must "accept all material allegations of fact as true and construe

8   the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*,

9   487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a

10  legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949-50.

11      A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or

12  the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

13  *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff

14  must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*

15  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but

16  it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129

17  S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that

18  allows the court to draw the reasonable inference that the defendant is liable for the

19  misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with

20  leave to amend unless it is clear that amendment could not possibly cure the complaint's

21  deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

22

23  **DISCUSSION**

24      Defendants ask the Court to dismiss the following state and federal claims relating to

25  Holland's strip search: (1) unlawful search under section 1983 (fifth cause of action); (2)

26  failure to supervise the persons who conducted the unlawful search under section 1983 (sixth

27  cause of action); (3) causation of an unlawful search by the enforcement of a blanket policy

28  under section 1983 (seventh cause of action); (4) interference with the exercise and

3

enjoyment of rights under California Civil Code section 52.1 (eighth cause of action); (5) assault (ninth cause of action); (6) battery (tenth cause of action); (7) negligence (twelfth cause of action); (8) negligent infliction of emotional distress (thirteenth cause of action); (9) violation of the strip search regulations in California Penal Code section 4030(f) (fourteenth cause of action); and (10) negligent training and supervision (fifteenth cause of action). Defendants argue that their conduct does not violate federal or state law, and if it does, federal and state immunity laws bar certain claims. They also argue that Holland should not be granted leave to amend dismissed claims.

## I. Federal Claims

Defendants move to dismiss Holland's fifth, sixth, and seventh causes of action, all of which allege that the strip search of Holland was unconstitutional pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and is therefore actionable under section 1983. At issue on each of these claims is whether Holland alleges a constitutional violation, and if she does, whether her claims are nonetheless barred by qualified immunity.

### A.  Constitutionality of the Search

Whether a search is constitutional turns upon the need for the particular search weighed against the invasion of rights the search entails. *Bell v. Wolfish*, 441 U.S. 520, 558-59 (1979). Under this balancing test, a court must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Bell*, 441 U.S. at 559; *Bull v. City and County of San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010). Where the policy or practice of a prison or jail is at issue, courts must also look to the test articulated in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *Turner* directs courts to consider whether any infringement on a prisoner's Fourth Amendment rights is reasonably related to legitimate penological interests. *Bull*, 595 F.3d at 973. This analysis requires consideration of (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify

United States District Court

For the Northern District of California

it; (2) the impact the accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives. *Id.*

In *Edgerly v. City and County of San Francisco*, the Ninth Circuit explained Fourth Amendment balancing as it is applied in the strip search context:

> [W]e first held in *Giles v. Ackerman* that arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. *Giles v. Ackerman*, 746 F.2d 614, 617 (9th Cir. 1984), *overruled by Bull*[, 595 F.3d 964]. We have repeatedly applied this rule in cases following *Giles. E.g., Act Up!/Portland v. Bagley*, 988 F.2d 868, 871-72 (9th Cir. 1993); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir. 1991). We recently carved out an exception to this rule in *Bull v. City and County of San Francisco*, in which we overruled *Giles* and held that such an arrestee could be strip searched without individualized suspicion if the arrestee would be introduced into the general jail population. *Bull*, at 977. In those circumstances, the institutional need to prevent arrestees from bringing contraband into the jail justified the invasion of personal rights that the search entails. *Bull* (citing *Bell*, 441 U.S. at 559). *Bull*, however, left undisturbed our line of precedent requiring reasonable suspicion to strip search arrestees charged with minor offenses who are not housed in the general jail population. *Bull*, at 972-73.

599 F.3d at 957 (internal quotations omitted).

Holland alleges that she was never placed in the general jail population, and the sign next to her cell, "Inmate to be housed alone," indicates that jail authorities never intended to house her there. Compl. 7:23-24. As a result, Defendants needed individualized reasonable suspicion in order to strip search Holland. *See Edgerly*, 599 F.3d at 957. On this motion, Defendants argue that Holland's arrest for misdemeanor battery on a police officer, by itself, provided jail officials with reasonable suspicion. The relevant cases, however, show that Holland's alleged offense, without more, does not support reasonable suspicion.

The Ninth Circuit has noted that "in some cases, the charge itself may give rise to reasonable suspicion." *Way v. County of Ventura*, 445 F.3d 1157, 1161 (9th Cir. 2006). The panel's example of this, and the only example presented in the parties' briefs, is found in *Thompson v. City of Los Angeles*, 885 F.2d 1439 (9th Cir. 1989). In that case, the Ninth

*United States District Court*
*For the Northern District of California*

5

United States District Court
For the Northern District of California

Circuit upheld the strip search of an inmate in part because the charge against him – grand theft auto – gave rise to reasonable suspicion. *Id.* at 1447. The charge was "sufficiently associated with violence to justify a visual strip search," the court reasoned. *Id.* Defendants argue that misdemeanor battery on a police officer is also a "crime of violence," and therefore gives rise to reasonable suspicion. Defs.' Mot. 3:12-14. *Thompson* is distinguishable from the instant case, however. First, the *Thompson* court emphasized that its decision  was "extremely narrow" and only applied to "theft of an automobile." *Id.* at n.6. This narrow decision did not prevent a later panel from finding that the charge of grand theft did not support reasonable suspicion. *See Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 716 (9th Cir. 1990), *implied overruling on other grounds recognized by Act Up!/Portland*, 971 F.2d 298. Second, the inmate searched in *Thompson* was housed in the general population of the jail. *Thompson*, 885 F.2d at 1447. At the time *Thompson* was decided, the fact that an inmate was housed in the general jail population did not, by itself, justify a strip search. The *Thompson* panel noted this, and concluded that the nature of the grand theft auto charge justified the search. *Id.* While the court did not expressly say that its analysis would have been different if the inmate had not been classified for housing in the general population, the court refers to this as "a factor [which] by itself cannot justify a strip search." *Id.* That it was a "factor" in the balancing test distinguishes *Thompson* from the instant case, where Holland was not housed in the general population. Finally, even if *Thompson* could be read to support the idea that the charge alone, irrespective of where an inmate is to be housed, can give rise to reasonable suspicion, Holland's alleged offense is not one of them. Holland was arrested for misdemeanor battery on a police officer under Penal Code section 243(b) ("section 243(b)"). For the purposes of section 243(b), battery is defined as "any willful and unlawful use of force or violence upon the person of another." Cal. Pen. Code § 242. In *Ortega-Mendez v. Gonzales*, 450 F.3d 1010 (9th Cir. 2006)[4], the Ninth

---

[4] At oral argument, Defendants argued that immigration and criminal cases analyzing whether California's battery statutes are "crimes of violence" are inapplicable here because of the high standards of proof involved in those cases. Assuming that is true, these cases are nonetheless instructive regarding the kind of conduct outlawed by California's battery

United States District Court
For the Northern District of California

Circuit noted that the phrase "use of force or violence" "is a term of art, requiring neither a force capable of hurting or causing injury nor violence in the usual sense of the term." *Id.* at 1016. State court decisions bear this out. The California Supreme Court in *People v. Colantuono* explained that

> [i]t has long been established, both in tort and criminal law, that the least touching may constitute battery. In other words, *force against the person is enough*, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark.

7 Cal. 4th 206, 214 n.4 (1994) (emphasis in original) (internal quotations omitted). Another California court noted that because the "least touching" may constitute battery, "[t]he word violence [in the statute] has no real significance." *People v. Mansfield*, 200 Cal. App. 3d 82, 87-88 (1988). As the relevant California jury instruction explains, "[t]he slightest touching can be enough to commit a battery if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind." Judicial Council of California, Criminal Jury Instructions 945. These sources make clear that the offense of misdemeanor battery on a police officer is not "sufficiently associated with violence to justify a visual strip search." *See Thompson*, 885 F.2d at 1447. Therefore *Thompson* does not apply to this case.

This conclusion is supported by other Ninth Circuit cases. In *Way*, the Ninth Circuit held that the strip search of a woman after she was booked into jail on a misdemeanor charge of being under the influence of drugs was unconstitutional. 445 F.3d at 1158-59. In *Kennedy*, the court held that a strip search of a woman arrested for grand theft, a felony, after she took some of her roommate's belongings to settle a debt, was unconstitutional. 901 F.2d at 704. Both cases cite *Thompson* and acknowledge that in some cases, the charge alone may give rise to reasonable suspicion. *Way*, 445 F.3d at 1161; *Kennedy*, 901 F.2d at 716. In neither case does the court follow *Thompson*, however. They conclude that the charges in those cases – being under the influence of drugs in *Way* and grand theft in *Kennedy* – do not give

statutes.

United States District Court

For the Northern District of California

1  rise to reasonable suspicion. *Way*, 445 F.3d at 1162; *Kennedy*, 901 F.2d at 716. While neither

2  case explains why *Thompson* is distinguishable, *Bull* suggests one of the aforementioned

3  reasons – *Way* and *Kennedy* involved "searches of arrestees who were not classified for

4  housing in the general jail or prison population." *Bull*, 595 F.3d at 981.

5      *Way* and *Kennedy* show that where *Thompson* does not apply, the circumstances of

6  the offense determine reasonable suspicion. Both cases cite *Giles*, 746 F.2d 614, which

7  emphasized that "[r]easonable suspicion may be based on such factors as the nature of the

8  offense, the arrestee's appearance and conduct, and the prior arrest record." *Id.* at 617. In

9  *Kennedy*, the court characterized the offense as "an ordinary disagreement between two

10  roommates." *Kennedy*, 901 F.2d at 716. In *Way*, the court noted that the plaintiff "was under

11  the control of the arresting officer from the time she was taken into custody at work until

12  booking. The officer perceived no indication that she was carrying drugs or contraband." 445

13  F.3d at 1162.  The circumstances of Holland's arrest show that they, too, did not give rise to

14  reasonable suspicion. Holland alleges that she was crossing the street legally while engaging

15  in a street protest. While she does not explicitly deny battering a police officer, she notes that

16  she was released twelve to fourteen hours after she had been arrested, and was never charged

17  with a crime. The fact that Holland was never charged raises an inference that her conduct

18  was not violent. Furthermore, her other alleged offenses – refusal to comply with a lawful

19  order and a crosswalk infraction – are minor. This Court has no reason to believe that the

20  officer who searched Holland had reasonable suspicion that she was carrying drugs or

21  contraband. While questions remain as to what went on during the street protest leading to

22  Holland's arrest, these ambiguities are resolved in her favor on a motion to dismiss.

23      The analyses in *Way* and *Kennedy* confirm the rule in *Edgerly* – if an inmate arrested

24  on a minor offense is not classified for housing in a jail's general population, jail officials

25  must have individualized reasonable suspicion before conducting a strip search. *See* 599 F.3d

26  at 957. Here the offense was minor and it does not appear that the officers had reasonable

27  suspicion that Holland was carrying or concealing contraband. Therefore, this Court finds

28  that Holland's allegations are sufficient to state a claim of illegal search under section 1983,

8

and Defendants' motion to dismiss Holland's section 1983 claims on the basis that Holland's constitutional rights were not violated is DENIED.

**B. Qualified Immunity**

Even if the strip search of Holland was unconstitutional, dismissal of her section 1983 claims against Sheriff Hennessey is appropriate if he is entitled to qualified immunity.[5] Qualified immunity applies if the unlawfulness of Holland's strip search was not clearly established at the time it was conducted. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). A law is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

This Court concludes that Sheriff Hennessey is not entitled to qualified immunity for the strip search of Holland. Arguing otherwise, Defendants contend that under *Thompson* and *Kennedy*, it was not clearly unlawful to conduct a jail strip search of a person arrested for a crime of violence. That may be true, but Defendants offer no authority other than *Thompson* to show that misdemeanor battery on a police officer is a crime of violence. As the above analysis shows, the "least touching" is a crime under section 243(b). *See People v. Mansfield*, 200 Cal. App. 3d 82, 87-88 (1988). The phrase "use of force or violence" in the definition of battery "is a term of art . . . ." *Ortega-Mendez*, 450 F.3d at 1016. "The word violence [in the statute] has no real significance." *Mansfield*, 200 Cal. App. 3d at 87-88. Thus the offense of misdemeanor battery on a police officer is clearly not "sufficiently associated with violence to justify a visual strip search." *Thompson*, 885 F.2d at 1447. It is a minor offense, and as the panel in *Edgerly* noted in its analysis of qualified immunity, "it was clearly established in 1989 'that it is unlawful to strip search an arrestee brought to a jail facility on charges of committing a minor offense, unless the officer directing the search possesses "a reasonable

---

[5] No other Defendant has invoked qualified immunity with respect to Holland's section 1983 claims.

9

United States District Court

For the Northern District of California

suspicion that the individual arrestee is carrying or concealing contraband.""" 599 F.3d at 958 (quoting *Act Up!/Portland*, 988 F.2d at 871-72 (quoting *Giles*, 746 F.2d at 617)).

This is especially true in light of *Kennedy*, where the charge of grand theft belied "an ordinary disagreement between two roommates." 901 F.2d at 718. Together with *Way*, these cases clearly show that where *Thompson* does not apply, the circumstances of the offense determine reasonable suspicion. *Id.*; *Way*, 445 F.3d at 1161-62. The circumstances as Holland describes them indicate that "[n]o weapons, no drugs, no contraband, no violent acts of any kind were involved." *See Kennedy*, 901 F.2d at 716. She challenges her arrest as unlawful, claiming that police officers "hoisted [her] off the ground as she stepped into a crosswalk to cross the street." Compl. 7:5-7. Any ambiguity about what else occurred between Holland and the officers must be resolved in Holland's favor on a motion to dismiss. Thus the circumstances of Holland's arrest, like the circumstances in *Kennedy* and *Way*, clearly do not give rise to individualized reasonable suspicion. In light of the nature of Holland's offense and the circumstances of her arrest, no reasonable officer could have believed that the strip search of Holland was lawful.

Defendants contend that *Bull* favors qualified immunity in this case. 595 F.3d 964. *Bull* was decided in 2010, too late to have put Defendants on notice of the unlawfulness of their conduct. Even so, *Bull* reinforces the above analysis. It distinguishes *Way* and *Kennedy* from cases like *Thompson*, making clear that if an arrestee is not classified for housing in the general jail population, individualized reasonable suspicion is the rule. *Bull*, 595 F.3d at 981.

For the foregoing reasons, strip searching Holland on the basis of her arrest for misdemeanor battery on a police officer was clearly unlawful such that its unlawfulness would have been clear to a reasonable officer. As a result, Defendants' motion to dismiss Holland's section 1983 claims against Sheriff Hennessey based upon the doctrine of qualified immunity is DENIED.

//

//

//

10

**II. State Claims**

Holland brings her eighth cause of action against Defendants under California Civil Code section 52.1 ("section 52.1"), and her fourteenth cause of action under California Penal Code section 4030(f) ("section 4030(f)"). She also alleges that Defendants are liable for assault (ninth cause of action), battery (tenth cause of action), negligence (twelfth cause of action), negligent infliction of emotional distress (thirteenth cause of action), and negligent training and supervision (fifteenth cause of action). The Court will first analyze the substantive claims and turn to state immunities.

**A. Section 52.1**

Section 52.1 authorizes a cause of action where

> a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . .

Cal. Civil Code § 52.1(a). Defendants contend that to state a claim for relief, Holland must show both that her rights were violated, and that the violation was "accompanied by a threat of violence." Defs. Mot. At 5:11-12. Defendants cite no authority construing section 52.1 to require a threat of violence, nor do they cite authority holding that the threat of a strip search, or the effectuation of a strip search, is not a threat, intimidation, or coercion under section 52.1. In light of the fact that Holland states a claim for the violation of her constitutional rights, Defendants' motion to dismiss Holland's claim under section 52.1 on the grounds that the statute was not violated is DENIED.

**B. Section 4030(f)**

California Penal Code section 4030(f) provides that

> no person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence ... , shall be subjected to a strip search or

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

visual body cavity search prior to placement in the general jail population, unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband.

Defendants' sole argument for dismissing Holland's cause of action under section 4030(f) is that she was arrested for a crime of violence, and thus the statute did not prohibit her strip search. However, Defendants have not shown that the offense of misdemeanor battery on a police officer is a crime of violence. Therefore Defendants' motion to dismiss on the grounds that section 4030(f) was not violated is DENIED.

## C. Tort Claims

Defendants contend that because a jailer may lawfully conduct a full body search of a prisoner at the time the prisoner is booked into jail, *People v. Maher*, 17 Cal. 3d 196, 200-01 (1976), all common law torts arising from a strip search incident to booking are foreclosed. Defendants correctly cite *Maher* for the principle that some full body searches are lawful. However, *Maher* itself recognizes that some are not – "a full body search incident to arrest is impermissible when the person is arrested for an offense for which he will merely be cited or released on bail." *Id.* at 199. Furthermore, in *Edgerly*, another strip search case, the Ninth Circuit reinstated various state tort claims against defendants. *Edgerly*, 599 F.3d at 691. Defendants fail to persuade the Court that Holland's tort claims must fail, and their motion to dismiss on the basis of California common law is DENIED.

## D. Immunity for the City

Defendants argue that the City is immune from all claims of injury to Holland under California Government Code section 844.6 ("section 844.6"), which provides that "[n]otwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of

Part 3 of the Penal Code, a public entity is not liable for . . . [a]n injury to any prisoner." A "prisoner" is defined as

> an inmate of a prison, jail, or penal or correctional facility. For the purposes of this chapter, a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked, as described in Section 7 of the Penal Code, becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes.

Cal. Gov't Code § 844. At issue is whether Holland is a prisoner, and if so, whether her state claims nonetheless survive immunity under section 844.6.

*1. Whether Holland is a Prisoner*

The parties submitted supplemental briefing on the question of whether Holland is a prisoner under section 844.6. Plaintiff contends that a person cannot be a prisoner unless she was lawfully arrested, and that because Holland challenges the lawfulness of her arrest, it would be premature to label her a prisoner for the purposes of government immunity. Defendants argue that a person who has been booked into jail, regardless of whether that person was lawfully arrested, is a prisoner for the purposes of immunity under section 844.6.

The Court is persuaded that a person need not be lawfully arrested to qualify as a prisoner under section 844.6. According to the plain language of the statute, prisoners include inmates as well as lawfully arrested persons brought into jail for booking. *Black's Law Dictionary* defines "inmate" as "a person confined in a prison, hospital, or similar institution." Black's Law Dictionary 803 (8th ed. 1999). *Webster's New World Dictionary* uses a similar definition, which describes an inmate as "a person . . . confined with others in a prison or mental institution." Webster's New World Dictionary 696 (3d college ed. 1991). These definitions do not suggest that to be considered an inmate, and therefore a prisoner, a person must have been lawfully arrested.

The legislative history of section 844.6 supports this view. The first sentence of the statutory definition of "prisoner," which provides that a prisoner is "an inmate of a prison, jail, or penal or correctional facility," Cal Gov't Code § 844, was part of the original

13

California Tort Claims Act of 1963. 1963 Cal. Stat. 3277. This sentence makes no mention of the lawfulness of the arrest leading to an inmate's confinement. The goal of immunity in the jail context, according to a report that resulted in the California Tort Claims Act, is to shield public entities from liability for their custodial activities. *Teter v. City of Newport Beach*, 30 Cal. 4th 446, 453 (2003). The report "observed that 'no tort liability should be admitted for damages sustained as a consequence of *conditions which are common to all inmates* and which simply represent a reasonable application of general policy determinations by responsible prison or jail authorities with respect to the administration of such institutions.'" *Id.* (quoting the commission report) (emphasis in *Teter*). Holland alleges that her strip search was conducted pursuant to jail policy. She does not contend that jail officials deviated from routine intake procedure, or did anything other than process a person presented to jail officials as a lawful arrestee.

The second sentence of section 844 was enacted in 1996. *Teter*, 30 Cal. 4th at 455. It adds that "a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked . . . becomes a prisoner, as a matter of law, upon his or her initial entry into a prison, jail, or penal or correctional facility, pursuant to penal processes." Cal. Gov't Code § 844. This amendment was sponsored by the California State Sheriffs' Association in response to a court opinion holding that an arrestee injured at a jail facility was not a prisoner because her booking process was not yet complete. *Teter*, 30 Cal. 4th at 455. The amendment "clarified that a lawfully arrested person who is brought into a law enforcement facility for the purpose of being booked becomes a prisoner, as a matter of law, upon his initial entry into the facility." *Id.* The intent was to restore the definition of "prisoner," not add limitations to it.

Cases considering whether a person is a prisoner focus on forced confinement rather than lawful arrest. In *Lawson v. Superior Court*, the Court of Appeal held that a woman in a community-based facility for women prisoners with young children was a prisoner under section 844.6, but that her child was not. 180 Cal. App. 4th 1372, 1384, 1387 (4th Dist. 2010). The court held that because the child "was not confined in the facility under any legal

14

compulsion," she was not a prisoner under section 844.6. *Id.* at 1387. Holland was legally compelled to remain in jail until released. She was "being held in pretrial detention . . . attendant upon enforcement of a criminal statute," and was therefore a prisoner. *Teter*, 30 Cal. 4th at 455 (internal quotations omitted).

In support of her position, Holland cites *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, in which the Supreme Court of California held that section 844.6 did not bar the false imprisonment action of an inmate confined in jail for several days beyond the end of his sentence. *Id.* at 713, 717. The inmate was not a prisoner, the court held, limiting its reasoning to the tort of false imprisonment. *Id.* at 716-17. It noted that in false imprisonment cases, "the 'injury' suffered by an individual is the illegal confinement itself rather than any detriment occurring after imprisonment; in other words, false imprisonment is not an 'injury to a prisoner' but instead is an injury to a non-prisoner which converts him into a prisoner." *Id.* at 716. No false imprisonment claim is at issue on this motion.[6] Thus Holland is a prisoner pursuant to section 844.6.

### 2. Whether the City is Immune

In her briefs, Holland makes no argument as to the viability of her section 52.1 and state tort claims in light of section 844.6. She contends that her claim under section 4030(f) survives because it was enacted after section 844.6. She points out that section 4030(p) provides that "[a]ny person who suffers damage or harm as a result of a violation of this section may bring a civil action . . . ." Because section 4030 explicitly grants detainees the right to sue, Holland argues, section 844.6 "could not reasonably be applied to wipe out the very cause of action 4030 later defined as viable." Pl.'s Opp. At 8:8-10.

Holland's reading of these statutes is unpersuasive. By its own language, section 844.6 immunity applies "[n]otwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1

---

[6] Plaintiff brings a claim of false imprisonment, but based upon the facts recited in the the Complaint, it appears to challenge her unlawful arrest rather than her jail confinement. Defendants did not challenge this claim on this motion to dismiss.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

(commencing with Section 3500) of Part 3 of the Penal Code . . . ." Section 4030(f) is not listed among these statutory sections. Just as the California Legislature was capable of passing section 4030, it was capable of amending the immunity provisions of section 844.6 to exempt the new law. The canon of statutory interpretation *expressio unius est exclusio alterius* supports the conclusion that if the legislature had intended to exclude section 4030 from section 844.6, it would have done so. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that the canon applies where the items listed are members of an associated group, justifying the inference that the items not listed were excluded deliberately). It has not done so, and this Court interprets the legislature's inaction as preserving section 844.6's general immunity provisions, rendering them effective against section 4030(f).[7]

Applying section 844.6 to suits brought under section 4030 does not "wipe out" the causes of action created by section 4030, as Holland contends. Instead, immunity under section 844.6 forecloses causes of action against one type of defendant – public entities – while leaving intact other kinds of suits, including those against public officials. This result does not unreasonably frustrate the goals of the statute, as Holland argues. Therefore, Defendants' motion is GRANTED as to Holland's eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and fifteenth causes of action, which are DISMISSED against the City, insofar as they arise from the strip search of Holland.

//

//

//

//

//

//

---

[7]Another district court reached the opposite result. *Bull v. City and County of San Francisco*, C03-01840 (N.D. Cal. Sept. 22, 2005), overruled on other grounds in *Bull*, 595 F.3d 964. The court reasoned that because section 4030 does not limit suits against particular classes of defendants, immunity under section 844.6 does not apply. *Contra Moyle v. Contra Costa County*, 2007 WL 4287315 (N.D. Cal Dec. 5, 2007).

**E. Immunity for Sheriff Hennessey**

Defendants contend that Sheriff Hennessey is not liable under Holland's state law claims because he is immune under Government Code section 820.2 ("section 820.2"), which provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Holland alleges that Sheriff Hennessey is liable for adopting the policy under which she was strip searched, as well as for his negligent failure to supervise his employees and for his employees' failure to establish reasonable suspicion prior to searching her.[8]

In her opposition to Defendants' motion, Holland seems to concede that insofar as she is pursuing claims against Sheriff Hennessey as a policymaker, he is immune from those claims. However, Holland contends that Sheriff Hennessey is directly liable for his deputies' failure to establish reasonable suspicion before strip searching Holland because section 820.2 does not immunize the ministerial implementation of a policy. *See Johnson v. California*, 69 Cal. 2d 782, 797 (1968). In *Johnson*, the California Supreme Court held that "a basic policy decision . . . may be discretionary and hence warrant governmental immunity, [but] subsequent ministerial actions in the implementation of that basic decision still must face case-by-case adjudication . . . ." Holland argues that because the ministerial actions undertaken to carry out Sheriff Hennessey's policy are not immunized, Sheriff Hennessey is liable for those ministerial actions. However, in *Johnson*, the court held the ministerial actor, not the policymaker, liable for the challenged ministerial actions. *Id.* Here Holland does not allege that Sheriff Hennessey had any role in Holland's strip search beyond setting the policy. Sheriff Hennessey's deputies implemented the policy, according to Holland. Thus

---

[8] Holland submitted supplemental briefing on the question of discretionary immunity under section 820.2. However, the Court's October 25, 2010 order, which allowed the parties to submit supplemental briefs, explicitly limited the content of these briefs to "whether the absence of probable cause to arrest Plaintiff would render Government Code section 844.6 immunity inapplicable to Plaintiff's strip search claims." The portions of Plaintiff's supplemental brief dealing with immunity under section 820.2 are untimely and clearly beyond the scope of the Court's order, and will not be considered. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-95(1990).

United States District Court
For the Northern District of California

while Holland may be correct that the deputies who searched her are not immune under section 820.2, she cites no authority that would withdraw immunity from the policymaker simply because his or her policy was carried out. To do so would nullify policymaker authority in all cases in which a policy was implemented. Holland cites no authority in support of this result.

Holland also contends that policymaker immunity under section 820.2 does not immunize Sheriff Hennessey from liability under her cause of action for negligent failure to supervise. She cites no authority in support of this argument, however, and levels of training and supervision would seem to fall within the realm of policymaking, as Defendants contend.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED as to Holland's eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and fifteenth causes of action, which are DISMISSED against Sheriff Hennessey insofar as they arise from the strip search.

**III. Leave to Amend**

Defendants argue that Holland should not be granted leave to amend her claims. However, dismissal of claims should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies leading to dismissal. *Steckman*, 143 F.3d at 1296. Defendants have not shown that Holland could plead no set of facts to cure the deficiencies described above. Therefore, their motion for denial of leave to amend is DENIED.

**CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Holland's eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and fifteenth causes of action against the City and Sheriff Hennessey, relating to the strip search of Holland, are DISMISSED with leave to amend. The motion to dismiss is denied, however, as to Holland's fifth, sixth, and seventh causes of action under section 1983, and as to Holland's state law claims against defendants other than the City and Sheriff Hennessey.

18

1    Holland's amended complaint, should she choose to amend, shall be filed no later than

2    January 28, 2011.

3

4    **IT IS SO ORDERED.**

5

6    Dated: 12/7/10

7                                           THELTON E. HENDERSON, JUDGE
                                            UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California