IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ELECIA HOLLAND,

               Plaintiff,

     v.

CITY OF SAN FRANCISCO, et al.,

               Defendants.

NO. C10-2603 TEH

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION FOR SUMMARY
JUDGMENT

This case, brought under 42 U.S.C. § 1983 and California law, arises out of the arrest and strip search of Plaintiff Elecia Holland. Presently pending before the Court is a Motion for Summary Judgment filed by Defendants the City of San Francisco, the County of San Francisco, and their officers. Upon careful consideration of the parties' papers and evidence, and the arguments made by both parties at the March 6, 2013, hearing, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment for the reasons discussed below.

**BACKGROUND**

**I. Factual Background**

The facts, gleaned from the evidence submitted by both parties and construed in the light most favorable to Holland, are as follows:

    **A. The Protest and Arrest**

On the evening of May 26, 2009, Elecia Holland, together with her girlfriend, Aleada Minton, participated in a march in protest of the California Supreme Court's decision upholding Proposition 8, which amended the California Constitution to provide that "[o]nly marriage between a man and a woman is valid or recognized in California." Cal. Const., art

United States District Court

For the Northern District of California

I, § 7.5.  The court's decision had been issued earlier that day.  Holland and Minton joined the march around 5:30 p.m. at San Francisco's City Hall.  Together with the other protesters, they marched and danced down Market Street to Yerba Buena Gardens, chanting "We're here! We're queer! Get used to it!" and "Separate church and state!"

Upon reaching the Gardens, Holland stopped to talk to some friends while Minton continued on into the Gardens.[1]  When Holland next saw Minton, police officers were escorting her in handcuffs through the throng of protesters toward a paddy wagon.  A group of protesters followed the officers, chanting "Let her go!"  Holland, eager to know where the police were taking Minton, joined the crowd.

The police officers formed a line along the curb to control the protesters and separate them from Minton.  Holland asked one of the officers in the line why Minton had been arrested and where they were taking her.  When the officer did not respond, Holland repeated her questions several times, growing upset and frustrated.  The officers did not respond to her repeated questions, and eventually, an officer told Holland to go back into the park.  Holland told the officer that she wanted to cross the street so that she could leave, but the officer said that she could not.  Standing on the curb in front of the crosswalk, Holland asked the officers several times why she could not cross the street.  The officers did not answer.

Evidence submitted by Defendants, and not contradicted by Holland's evidence, shows that Holland stepped into the crosswalk several times and that each time an officer ordered her to get back onto the sidewalk.  The last time Holland stepped off the sidewalk, Officer John Burke physically guided her back onto it.

Immediately prior to her arrest, Holland was standing on the sidewalk and talking to an officer when she looked up and saw Minton being put in the paddy wagon.  Holland raised her hands to her head and exclaimed, "Oh my gosh!" and her elbow struck Burke's shoulder.  The next thing Holland knew, she was completely surrounded by police officers.  According to Holland, Burke and Officers Matthew Neves and Philip Papale grabbed her

---

[1]  Among these friends was Kris Gleason, who stayed with Holland until Holland was arrested.

United States District Court
For the Northern District of California

arms from behind, kicked her in the shins, kicked her off her feet, threw her face first onto the ground, and put a knee on her head and neck.  Defendants dispute whether the officers kicked Holland in the legs, and generally dispute the amount of force that was used to take Holland into custody.  Once they had Holland down lying on her front in the street, the officers handcuffed her arms behind her back, raised her to her feet, and led her to the paddy wagon.  As the police led Holland through the crosswalk, the crowd of protesters chanted, "Shame on you! Shame on you!" and "Fuck the police and fuck Prop 8!"

**B. The Strip Search**

Holland was booked into the San Francisco County Jail at 425 Seventh Street at 8:16 p.m.  For the next few hours, she was housed alone in a glass holding cell.  At 11:20 p.m., Holland was taken to a small room with a curtain, where Deputy Jaculine Barnes ordered her to enter the room by herself and remove her clothes.  Once Holland was naked, Barnes directed her to lift her breasts, lift her arms, open her mouth, stick out her tongue, and "bend over and spread her stuff open."  Holland complied.

After the strip search and a health screening, Holland was returned to the same glass holding cell where she initially had been housed.  On the wall next to Holland's cell was a sign reading "Inmate to be housed alone."  A note in Holland's arrest records contains the instruction, "house alone."  (Ex. 16 to Green Dec.)  Holland remained alone in the cell until the next morning, when she was escorted to court.

At the court, Holland was placed in a cell with another inmate who told Holland that she was there on a traffic warrant.  Holland was in the cell at the court for approximately one hour, after which a deputy informed her that her case had been dismissed.  Holland was then returned to the glass holding cell, where she remained, alone, until approximately 11:00 a.m., when she was released.

## II. Proceedings

Holland filed her initial complaint in this action on June 14, 2010.  The Court granted in part and denied in part Defendants' motion to dismiss on December 7, 2010, and granted

Holland leave to amend with respect to the dismissed claims.  On May 3, 2012, Holland filed the operative first amended complaint, which sets out fifteen causes of action against the City of San Francisco, San Francisco Chief of Police Heather Fong, the County of San Francisco, San Francisco County Sheriff Michael Hennessey, and various officers.  Holland's claims against City Defendants relate to her arrest; the claims against County Defendants relate to her strip search.  Defendants now request that the Court enter summary judgment in their favor on all of Holland's claims, arguing that their conduct did not violate any state or federal law, and alternatively, that they are entitled to qualified immunity from certain claims.

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings or materials in the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless*, *Inc.*, 509 F.3d 978, 984 (9th Cir.2007).  However, on an issue for which the opponent of summary judgment will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  If the moving party meets its initial burden, the opposing party must then set out

**United States District Court**
For the Northern District of California

4

specific facts showing a genuine issue for trial to defeat the motion.  *Anderson*, 477 U.S. at 250.

**DISCUSSION**

**I. Holland's Arrest**

    **A. False Arrest**

      Defendants argue that Holland's state law false arrest and false imprisonment claim should be dismissed because the officers had probable cause to arrest her.  They also request dismissal of her Fourth Amendment claim under 42 U.S.C. § 1983, to the extent that it is premised on an arrest without probable cause.

      Section 246 of the California Penal Code defines false arrest or false imprisonment as "the unlawful violation of the personal liberty of another."  Cal. Penal Code § 236.  California law does not grant a police officer governmental immunity for false arrest or false imprisonment.  *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 510 (2006).  However, California peace officers may not be held civilly liable for false arrest if "[t]he arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful."  *Id*. § 847(b).  The terms "reasonable cause" and "probable cause" are interchangeable, and California courts look to cases decided under the Fourth Amendment to determine whether reasonable cause existed for purposes of section 847.  *Levin v. United Airlines*, 158 Cal. App. 4th 1002, 1017 n.18 (2008); *Blackenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007).

      Defendants contend that Burke had probable cause to arrest Holland for willful failure to comply with an order by a uniformed police officer performing Vehicle Code duties, a violation of Vehicle Code section 2800(a).[2]  Defendants' contention is supported by Burke's deposition, in which he testified that he directed Holland "numerous times" to get back onto

---

[2] Documents from the time of Holland's arrest show that she was arrested for jaywalking (Vehicle Code section 21954(a)) and battery on a police officer (Penal Code section 243(b)), in addition to the section 2800(a) violation.  Defendants do not argue that there was probable cause to arrest her under either of these sections.

United States District Court
For the Northern District of California

the sidewalk and that he had to physically guide her back to the sidewalk.  (Ex. B to Carling Dec. at 69:4-14).  Additionally, in an interview with the San Francisco Police Department's Office of Citizen Complaints ("OCC") that took place the day after Holland was released, Holland described being told by "numerous officers" to get out of the street and back on the sidewalk.  She specifically recalled being told "three times" to get out of the crosswalk where she was eventually arrested.[3]  (Ex. F to Carling Dec. at 10-11.)  Holland further stated, "I was probably in the wrong for not following their commands" and "I actually agree with the refuse to comply with proper order [charge]."  (Ex. F to Carling Dec. at 29, 33.)

Holland counters this evidence by pointing to the deposition testimony of her friend, Kris Gleason, who was with her when she was arrested.  Gleason testified that she did not remember any officer saying anything to Holland or giving Holland a command prior to arresting her.  (Ex. 3 to Carling Dec. at 39:1-11.)  But in light of Burke's testimony and Holland's admissions in the OCC interview, Gleason's testimony that she does not remember is insufficient to create a dispute of material fact.

Accordingly, Defendants' motion to dismiss is GRANTED as to Holland's false arrest and false imprisonment claims (Eleventh Cause of Action).

**B.  Excessive Force**

Defendants argue that Holland's Fourth Amendment excessive force and related state law assault and battery claims should be dismissed based on a video of Holland's arrest.  To prove a claim of assault or battery against a police officer under California law, a plaintiff must show that the officer's use of force was unreasonable.  *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998).  In analyzing claims under California law that police officers used excessive force in the course of an arrest, courts apply the same standard applied in excessive force claims brought under the Fourth Amendment.  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  That analysis requires a careful balancing of "the nature and quality of the intrusion on a person's liberty" with "the countervailing

---

[3] Holland filed a complaint with the OCC after her release and an investigator interviewed her regarding her complaint on May 28, 2009.

United States District Court
For the Northern District of California

1    governmental interests at stake" to determine whether the use of force was objectively

2    reasonable under the circumstances. *Id*. (internal quotation marks and citation omitted).

3        Defendants contend that the video of Holland's arrest shows that the force used by the

4    officers was reasonable. The video shows protesters milling around on the sidewalk, some

5    holding signs and banners, others taking pictures. Perhaps a dozen police officers are

6    standing in the street and on the edge of the sidewalk, concentrated near the crosswalk.

7    Holland is standing on the sidewalk next to the crosswalk, surrounded by police officers on

8    all sides. Without any obvious provocation, the officers close in on Holland. A brief

9    struggle ensues. It is not clear form the video footage whether Holland is resisting the

10   officers. Six seconds later, Holland has been taken down to the ground with her hands

11   secured behind her back and an officer's knee on her head and neck.

12       The view of Holland's legs as she is being taken down is blocked by the police

13   officers who are surrounding her. In the moment that she is brought down to the pavement, a

14   taxi drives past, entirely obscuring Holland and the officers from view; it is impossible to tell

15   whether the officers kicked Holland's legs out from under her and threw her down to the

16   ground – as Holland contends they did – or whether they in fact used "as little force as

17   necessary" to take her into custody – as Defendants contend. (Opp. at 12; Mot. at 11.)

18       While video evidence may in some cases be sufficient to establish that officers used

19   reasonable force in effecting an arrest, *see Scott v. Harris*, 550 U.S. 372, 380 (2007),

20   Defendants' reliance on the video evidence in the present case is misplaced. It is not possible

21   to discern from the video the amount of force the officers used on Holland or whether that

22   amount of force was justified under the circumstances that the officers confronted. Viewing

23   the video, and the evidence as a whole, in the light most favorable to Holland, a reasonable

24   trier of fact could find that the degree of force that the officers used was unreasonable under

25   the circumstances.

26       Defendants also argue that the individual officers – Burke, Nieves, and Papale – are

27   entitled to qualified immunity on the excessive force claim because reasonable officers in the

28   officers' positions would not have known that the amount of force used was unreasonable.

United States District Court
For the Northern District of California

Qualified immunity applies if the unlawfulness of the officers' use of force was not clearly established at the time of Holland's arrest. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). A law is clearly established where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* In the context of an excessive force claim,

> An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205. "The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was . . . well-established in 2001," years before Holland's arrest. *See Young v. County of Los Angeles*, 655 F.3d 1156, 1167-68 (9th Cir. 2011). This principle put the officers on notice that to gang-tackle an individual who was suspected of disobeying an officer's order to get out of the street constituted a violation of the Fourth Amendment. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 478-79 (2007).

Accordingly, Defendants' motion is DENIED as to Holland's excessive force, assault, and battery claims (Second, Ninth, and Tenth Causes of Action) against Burke, Nieves, and Papale. Although Holland's complaint alleges this claim against "All the City Defendants," there is no evidence that Fong or McDonaugh used any force against Holland, and the motion is therefore GRANTED with respect to Holland's personal capacity claims against them.

### C. First Amendment Retaliation

Holland contends that the officers arrested her and used excessive force in retaliation for her protected speech, in violation of the First Amendment. To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) the defendant's action "would chill or silence a person of ordinary firmness from future First Amendment activities" and (2) the defendant's "desire to cause the chilling effect was a but for cause of the defendant's action." *Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (internal quotation marks and citation omitted). In this case, it is not disputed that retaliatory arrest or

search and seizure has the requisite chilling effect, *see Ford v. City of Yakima*, No. 11-35319, __F.3d__, 2013 WL 485233 (9th Cir. Feb. 8, 2013), or that "verbal criticism and challenge directed at police officers" is protected by the First Amendment, *City of Houston v. Hill*, 482 U.S. 451, 467 (1987).

Defendants argue that Holland has not put forward any evidence that raises a material issue of fact with respect to whether her arrest or the officers' use of force was motivated by protected speech.  In response, Holland points to the deposition testimony of her friend, Gleason, who described observing Minton's arrest together with Holland.  Gleason testified that she observed Holland question the police officers in a way that "felt exhaustive," witnessed Holland becoming "upset and worried to frustration," and then "it going from [the officers] talking" to Holland being "swarmed," "taken and pushed around" and "jumped" by the officers. (Ex. 3 to Green Dec. at 35-36.)  In his deposition, Officer Burke testified that prior to her arrest Holland was yelling, "Free her! Free her! You can't make that arrest!" at the paddy wagon in which Minton was being transported and that Holland told Burke that she "had a right to be in the street."  (Ex. 1 to Green Dec. at 50; Ex. B to Carling Dec. at 69.)  A reasonable juror could infer from this testimony that Holland would not have been arrested or subjected to excessive force had it not been for her persistent questioning of the officers and verbal challenges to their authority.

Defendants also argue that the individual officers are entitled to qualified immunity because, they contend, it was not clearly established at the time of Holland's arrest that a First Amendment retaliatory arrest claim may lie despite the presence of probable cause to support her arrest.  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (qualified immunity shields a government official from civil damages liability unless the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the challenged conduct).  In support of this argument, Defendants cite to the Supreme Court's recent opinion in *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012).  In *Reichle*, the Court observed that it "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause," and that the Tenth Circuit,

9

United States District Court

For the Northern District of California

1    where *Reichle* originated, likewise had not recognized that specific right.  *Id*. at 2094.  This

2    case, by contrast, was brought in the Ninth Circuit, where at the time of Holland's arrest, it

3    was clearly established that a First Amendment retaliatory arrest claim may lie even if the

4    arrest is supported by probable cause.  *See Skoog*, 469 F.3d at 1235.  Officers Burke, Neves,

5    and Papale therefore are not entitled to qualified immunity on Holland's First Amendment

6    retaliation claim (her First Cause of Action), and Defendants' motion to dismiss is DENIED

7    with respect to them. The motion is GRANTED as to Holland's First Amendment claims

8    against Fong and McDonagh because there is no evidence that either personally took any

9    retaliatory action against Holland.

10       **D.  *Monell***

11       Holland asserts claims against the police department and its supervisory employees

12   based on her arrest and the officers' alleged retaliation and use of excessive force.  Under

13   *Monell v. Department of Social Services*, a section1983 plaintiff cannot state a claim for

14   municipal liability based on a *respondeat superior* theory.  436 U.S. 658, 691 (1978).

15   However, a municipal government entity may be held liable under § 1983 "when execution

16   of a government's policy or custom, whether made by its lawmakers or by those whose edicts

17   or acts may fairly be said to represent official policy, inflicts the injury."  *Id*. at 694.

18   Inadequacy of police training may serve as a basis for liability under section 1983 if "the

19   failure to train amounts to deliberate indifference to the rights of persons with whom the

20   police come into contact."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

21       Defendants argue that Holland has not put forth any admissible evidence of failure to

22   train or a policy, custom, practice that would support *Monell* liability for the arrest and

23   excessive force claims.  In response, Holland points to a declaration by her police practices

24   expert, Barbara Attard, in which Attard opines that "[t]he level of force used to take Elecia

25   Holland into custody was excessive and in violation of SFPD General order 8.03 'Crowd

26   Control.'" (Ex. A to Docket No. 61.)  Holland also argues that the evidence shows that the

27   arresting officers ignored their training.  Under *Monell* "a municipality cannot be held liable

28

*solely* because it employs a tortfeasor." 436 U.S. at 691.  Evidence that the arresting officers ignored their training and failed to comply with police department policy does not support a claim that the officers were inadequately trained or that Defendnats' policies, customs, or practices caused Holland's injury.  Defendants' Motion to Dismiss is therefore GRANTED with respect to Holland's *Monell* claims relating to her arrest (Third and Fourth Causes of Action).

## II.  The Strip Search

Holland raises challenges under the Fourth Amendment and California Civil Code 4030(f) against Deputy Barnes, Sheriff Hennessey, and the County of San Francisco based on Barnes's strip search of Holland.[4]

### 1. Fourth Amendment

Defendants argue that, under the Supreme Court's recent decision in *Florence v. Board of Chosen Freeholders*, __ U.S. __, 132 S.Ct. 1510, 1512 (2012), Barnes's strip search of Holland did not violate the Fourth Amendment.  In *Florence*, the Court upheld a policy pursuant to which each prisoner, prior to being admitted to the jail's general population, was subject to a strip search, including a close visual inspection of the prisoner's body cavities. *Id.* at 1513-14.  The Court explicitly declined to "rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees." *Id.* at 1522. Florence was a five to four decision, and in separate concurring opinions, Justices Roberts and Alito explicitly conditioned their approval of the result reached by the majority on the fact that "the Court does not foreclose the possibility of an exception to the rule it announces." *Id.* at 1523 (Roberts, J., concurring); *see also id.* at 1524 (Alito, J., concurring).

---

[4] Holland also raises assault and battery claims against Barnes based on the strip search.  Defendants' only argument with respect to the assault and battery claims is that the video shows that the officers did not use unreasonable force (Mot. at 19) but the video does not show the strip search.  Accordingly, Defendants' motion is DENIED with respect to Holland's assault and battery claims against Barnes arising out of the strip search.

United States District Court

For the Northern District of California

1   Specifically, Justice Roberts suggested that a strip search would not be reasonable *per se*

2   when an arrestee is detained for a minor traffic violation or if there is an alternative to

3   detaining the arrestee in the general jail population.  *Id.*  Justice Alito likewise emphasized

4   that strip searches of individuals arrested on minor charges and "released from custody prior

5   to or at the time of their initial appearance before a magistrate" might not be constitutional,

6   especially if the arrestees "could be held in available facilities apart from the general

7   population."  *Id.*

8       The Parties agree that *Florence* leaves undisturbed a line of Ninth Circuit precedent

9   holding that strip searches of detainees "charged with minor offenses who are not classified

10  for housing in the general jail population" are unlawful unless the officer directing the search

11  has a reasonable, individualized suspicion that the detainee is carrying or concealing

12  contraband.  *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 957 (citing *Bull v.*

13  *City and County of San Francisco*, 595 F.3d 964, 977 (9th Cir. 2010) (en banc)); *see also Act*

14  *Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir 1993).  Thus, after *Florence*, a strip

15  search of a detainee charged with a minor offense who has not yet appeared before a

16  magistrate is permissible if: (1) the detainee cannot be held apart from the general jail

17  population; or (2) the officer directing the search has a reasonable, individualized suspicion

18  that the arrestee is carrying contraband.

19      Defendants argue that their strip search of Holland was constitutional under *Florence*

20  because it was carried out pursuant to Sheriff Department policy and happened as part of the

21  regular intake process for all individuals who are admitted to the jail.  While substantial

22  deference is due to jail administrators in matters involving the security of the facilities that

23  they are charged with maintaining, *Florence*, 132 S.Ct. at 1510, the undisputed fact that

24  Holland's search was carried out pursuant to Defendants' policy does not alone suffice to

25  make the search constitutional.  *See Edgerly*, 599 F.3d at 957.

26      In the present case, viewing the evidence in the light most favorable to Holland, she

27  was arrested for a minor offense and Defendants could have – and in fact did – hold her apart

28

from the jail's general population.  Although Defendants assert that they might have had to admit Holland to the general population of the jail at any time, Holland points to evidence suggesting that the jail intended to house her alone, including a sign by her cell that said "inmate to be housed alone" and a notation in the record of her arrest showing that jail staff was directed to house Holland alone.  (Ex. 16 to Green Dec.)  It is not disputed that Holland was strip searched before seeing a magistrate, and Defendants do not contend that they had reasonable, individualized suspicion that Holland was concealing contraband.

Accordingly, Holland's Fourth Amendment claim will be permitted to proceed against Barnes, who conducted the strip search.  With respect to Holland's *Monell* claim against Hennessey, Defendants do not dispute that Barnes's strip search of Holland was carried out pursuant to department policy or practice and that Hennessey is a policymaker.  Defendants' motion for summary judgment is therefore DENIED as to Holland's Fifth Cause of Action, against Barnes, and Seventh Cause of Action, against Sheriff Hennessey in his official capacity.  Holland has not pointed to any evidence supporting her claim against Hennessey in his personal capacity; Defendants' motion is therefore GRANTED as to her Sixth Cause of Action.

### 2.      California Civil Code § 4030(f)

Defendants also move to for summary judgment on Holland's claim under section 4030(f) of the California Penal Code, which provides, in pertinent part:

> No person arrested and held in custody on a misdemeanor or infraction offense, except those involving weapons, controlled substances or violence . . . shall be subjected to a strip search or visual body cavity search prior to placement in the general jail population, unless a peace officer has determined there is reasonable suspicion based on specific and articulable facts to believe such person is concealing a weapon or contraband, and a strip search will result in the discovery of the weapon or contraband.

Defendants argue that their search of Holland was permissible under section 4030(f) because assault on a police officer categorically involves violence.  This Court previously held that misdemeanor battery on a police officer is not categorically a crime of violence, and sees no

13

1    reason to reconsider that ruling now.  *See Holland v. City of San Francisco*, No. C10-2603,

2    2010 WL 5071597, at *7 (N.D. Cal. Dec. 7, 2010).  Viewing the evidence in the light most

3    favorable to Holland, the "assault" for which she was arrested consisted of accidentally

4    bumping Burke's shoulder with her elbow while standing next to him on a crowded

5    sidewalk.  Whether the assault, in fact, involved violence is a question for the jury.

6         Defendants argue, in the alternative, that Barnes is immune with respect to Holland's

7    section 4030(f) claim under section 820.6 of the California Government code, which

8    provides:

9         If a public employee acts in good faith, without malice, and under the
      apparent authority of an enactment that is unconstitutional, invalid or
10        inapplicable, he is not liable for an injury caused thereby except to the
      extent that he would have been liable had the enactment been
11        constitutional, valid and applicable.

12   California Government Code § 810.6 defines "enactment" as "a constitutional provision,

13   statute, charter provision, ordinance or regulation."  In support of immunity, Defendants

14   point to testimony that the Sheriff's Department considers a misdemeanor battery on a police

15   officer in violation of section 243 to be a crime of violence that justifies a strip search.  (Ex.

16   C to Carling Dec. at 74:1-16.)  They do not, however, point to any "enactment" by which

17   section 243 is defined as a crime involving violence.  Rather, Defendants' evidence shows

18   that Holland's strip search was carried out pursuant to a police department policy of

19   considering section 243 violations to be categorically "crimes of violence."  But section

20   820.6 does not provide immunity based on law enforcement agency policies.  *See Hansen v.

21   California Dept. of Corrections*, 920 F. Supp. 1480, 1501 (N.D. Cal. 1996).  And Defendants

22   do not contend that Holland's strip search was carried out under the "apparent authority" of

23   section 4030(f), the effect of which is not to permit strip searches, but to prohibit them absent

24   certain conditions.

25         Because Holland has raised a dispute of material fact with respect to whether she was

26   arrested for a crime involving violence, and because Barnes is not entitled to immunity under

27

28

United States District Court
For the Northern District of California

1   section 820.6, summary judgment is DENIED on Holland's claim under section 4030(f) (her

2   Fourteenth Cause of Action).

3

4   **III.  Bane Act**

5        Holland brings her Eighth Cause of Action under the Tom Bane Civil Rights Act,

6   section 52.1 of the California Civil Code, which provides a civil action for damages based on

7   interference "by threats, intimidation, or coercion" with plaintiffs' rights under the

8   Constitution and laws of California and the federal government.  Cal Civ. Code  § 52.1(a) &

9   (b).  Section 52.1 was intended to be a state law analogue to 42 U.S.C. § 1983.  Assembly

10  Committee on the Judiciary, Bill Analysis, AB 2719 (as introduced February 25, 2000).  But

11  in contrast to section 1983, section 52.1 applies to private actors as well as to government

12  agents, there is no qualified immunity, and, as relevant here, liability under section 52.1 is

13  limited to violations of constitutional and statutory rights accomplished "by threats,

14  intimidation or coercion."  *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1242-

15  42 (2007).  In sum, "[t]he essence of a Bane Act claim is that the defendant, by the specified

16  improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff

17  from doing something he or she had the right to do under the law or to force the plaintiff to

18  do something that he or she was not required to do under the law."  *Austin B. v. Escondido*

19  *Union Sch. Dist*., 149 Cal. App. 4th 860, 883 (2007) (citing to *Jones v. Kmart Corp*., 17 Cal.

20  4th 329, 334 (1998)).

21       Citing to a recent California court of appeal decision, *Shoyoye v. County of Los*

22  *Angeles*, 203 Cal. App. 4th 947 (2012), Defendants argue that Holland has failed to state a

23  claim under section 52.1 because she has not shown threats, intimidation, or coercion

24  independent from that inherent to her false arrest, excessive force, and unlawful strip search

25  claims.[5]  This argument is based on an overly broad reading of *Shoyoye,* one which conflicts

26  ─────────────

27       [5]  Both prior to and after *Shoyoye*, federal district court decisions have divided on the
    issue of whether a Bane Act claim lies when the alleged threats, intimidation, and coercion
    are inherent to the underlying statutory or constitutional violation.  *See*, *e.g.*, *Gollas v.*

28

United States District Court

For the Northern District of California

1   with California Supreme Court precedent.  In *Venegas v. County of Los Angeles*, the

2   California Supreme Court held that the plaintiffs "adequately stated a cause of action under

3   section 52.1" based on allegations showing an unconstitutional search and seizure.  32 Cal.

4   4th 820, 827-28 & 843 (2004).  The court pointed out that section 52.1 does not "extend to

5   all ordinary tort actions" because it is predicated on the violation of a "constitutional or

6   statutory right," as opposed to common law.  *Id*. at 843.  Because the plaintiffs' allegations

7   involved "unconstitutional search and seizure violations" and not "ordinary tort claims," they

8   had "adequately stated a cause of action under section 52.1."  *Id*.

9       By contrast, in *Shoyoye*, an administrative error resulted in the plaintiff being

10  erroneously detained for two weeks after his release date.  203 Cal. App. 4th at 959.  The

11  court held that in the absence of a showing of knowledge or intent, the coercion inherent in a

12  wrongful overdetention – the bare fact that the plaintiff was not free to leave the jail – was

13  insufficient to satisfy section 52.1's requirement that the interference with the plaintiff's

14  rights be accomplished "by threats, intimidation, or coercion."  *Id*.  The court reasoned that

15  section 52.1 was not intended to redress harms "brought about by human error rather than

16  intentional conduct."  *Id*.  It distinguished the facts in *Venegas* on the ground that, in that

17  case, "the evidence presented could support a finding that the probable cause that initially

18  existed to justify stopping the plaintiffs eroded at some point, such that the officers' conduct

19  became intentionally coercive and wrongful."  *Id*. at 961.  The *Shoyoye* court thus

20  acknowledged that a Bane Act claim could be based on an arrest without probable cause,

21  even if no "threat, intimidation, or coercion" were shown separate and apart from that

22  inherent to the underlying constitutional violation.

23      In this case, as in *Venegas*, the harms alleged – an arrest without probable cause, the

24  use of excessive force, retaliation for protected speech, and an unlawful strip search – were

25  brought about by intentional conduct.  In contrast to the negligent overdetention in *Shoyoye*,

26  _____

27  *County of Los Angeles*, No. C12-8742, 2013 WL 800272, at *5 & n. 2 (C.D. Cal. 2013), and
cases cited therein; *Luong v. City & County of San Francisco*, No. C11-5661, 2012 WL
5519210, at *7 (N.D. Cal. 2012), and cases cited therein.

28

this conduct may reasonably perceived as threatening, intimidating, or coercive. *See Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1050 (2007) (arrest without probable cause); *Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F.Supp.2d 1084, 1103-04 (N.D. Cal. 2005) (unreasonable search and seizure); *Skeels v. Pilegaard*, No. C12-2175 (N.D. Cal. 2013) (unreasonable search and seizure and arrest without probable cause); *Bass v. City of Fremont*, No. C12-4943  (N.D. Cal. 2013) (same).  Defendants' motion to dismiss Holland's claim under section 52.1 is therefore DENIED.

**IV. Negligence**

Defendants move to dismiss Holland's negligence, negligent infliction of emotional distress and negligent training and supervision claims, arguing that they are immune from liability on these claims under California Government Code § 821.6.  Defendants also argue that Holland has put forth no evidence that supports her negligent training and supervision claims.

With respect to section 821.6, Defendants are incorrect.  That section relieves public employees from liability only for injuries caused by "instituting or prosecuting any judicial or administrative proceeding," and Holland does not assert any claims related to proceedings instituted against her.  *See Blackenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (observing that "section 821.6, as it applies to police conduct, is limited to actions taken in the course or as a consequence of an investigation" and not during an arrest).  Accordingly, Defendants' motion is DENIED with respect to Holland's Twelfth and Thirteenth Causes of Action.

Defendants are, however, correct that Holland has put forth no evidence showing a causal connection between the training and supervision of the officers executing the arrest and conducting the strip search and the harms that Holland alleges she endured.  Holland points only to evidence that Barnes conducted an unconstitutional strip search of her and that Burke conducted an unlawful arrest.  This evidence, standing alone, is insufficient to show

United States District Court
For the Northern District of California

that Holland's harm was caused by negligent supervision of Burke or Barnes by their respective superiors.  Accordingly, summary judgment is GRANTED as to Holland's Fifteenth Cause of Action.

**CONCLUSION**

For the reasons given above, Defendants' Motion for Summary Judgment is GRANTED with respect to:

1.  The First Cause of Action insofar as it is alleged against the Chief of San Francisco Police Heather Fong and Officer Dan McDonagh personally because there is no evidence that these defendants retaliated against Holland;

2.  The Second Cause of Action insofar as it is alleged against the Fong and McDonagh personally because there is no evidence that these defendants used any force against Holland;

3.  The Third Cause of Action because Holland has not put forward any evidence of deliberate indifference or failure to train, supervise, or discipline that caused her to be arrested without probable cause and subjected to excessive force;

4.  The Fourth Cause of Action, alleging *Monell* liability for excessive force, because Holland has not put forward any evidence that an unconstitutional custom, policy, or practice caused her harm;

5.  The Sixth Cause of Action, against Hennessey in his personal capacity because Holland has not put forward evidence that Hennessey's deliberate indifference or failure to train, supervise, or discipline caused her to be unlawfully strip searched;

6.  The Ninth Cause of Action and Tenth Cause of Action insofar as they are alleged against the Fong and McDonagh personally because there is no evidence that these defendants used any force against Holland;

7.  The Eleventh Cause of Action, for false arrest or false imprisonment because there was probable cause to arrest Holland for disobeying orders;

8.  The Fifteenth Cause of Action against Fong, Burke, and McDonagh personally for negligent supervision because Holland has not put forward any evidence of failure to train, supervise, or discipline that caused her harm.

The Motion is otherwise DENIED.

With good cause appearing, it is further ORDERED that the Order to Show Cause why sanctions should not be imposed on Plaintiff's counsel for her failure to appear at the

**United States District Court**
For the Northern District of California

18

March 4, 2013, hearing on this motion (Docket No. 101) is VACATED.  The Court trusts

that counsel will take greater care in monitoring and maintaining her calendar in the future.

.

**IT IS SO ORDERED.**

Dated:   03/11/2013

_____

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

**United States District Court**
For the Northern District of California